THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Danny Joe King, | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 08-3336 |
| CertainTeed Corporation, | * | |
|     Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Danny Joe King ("King") initiated this claim against CertainTeed Corporation ("CertainTeed") seeking recovery for injuries allegedly sustained from a slip-and-fall accident that took place at the Defendant's factory in Mountain Top, Pennsylvania. Pending before this Court is Defendant's Motion for Summary Judgment (Paper No. 10). This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, Defendant's Motion for Summary Judgment is DENIED.

### BACKGROUND

The facts are viewed in a light most favorable to the Plaintiff, as the non-moving party. *See Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The present lawsuit arises from injuries sustained by Plaintiff Danny Joe King on January 31, 2007, at the CertainTeed Corporation's factory, a five-story building located in Mountain Top,

---

[1] King is a resident of Maryland and is seeking one million dollars in damages. Defendant CertainTeed Corporation is incorporated in the state of Delaware with its principal place of business in Pennsylvania.

Pennsylvania. King was employed as a laborer for North American Industrial Services ("NAIS"), a company that had been contracted to perform various cleaning services at CertainTeed's factory. (McConihay Dep. 9.) NAIS had sent two cleaning crews to work on the factory, one from its office in Colora, Maryland, and another from an office in New York. King was a member of the cleaning crew from Colora, which had been assigned responsibility for power-cleaning ductwork located on the factory's roof. (Compl. ¶¶ 9-10; King Dep. 12; Holmes Dep. 41-42.)

On January 30, 2007, NAIS began its cleaning work on the factory. Because of wintry conditions in the area, approximately two to three inches of ice and snow had accumulated on the roof's surface. (Compl. ¶ 10.) The factory roof was composed of a plastic material, which combined with the ice, created conditions similar to a "frozen pond." (Holmes Dep. 17.) The crew members on the roof were having difficulty with their footing, and King claimed that he fell down five times on that day. (Def.'s Ex. 1 at 4.)

The NAIS workers returned to the factory the following day, on January 31, to continue the cleaning. King observed that there had been more wintry precipitation the night before, as the mats that had been placed on the roof the day before were covered in snow and ice. (King Dep. 54-55.) The workers were having enormous difficulty with their footing, and King stated that "everybody was falling down." (Holmes Dep. 39-40.) Representatives of CertainTeed inspected the roof on January 31 and received complaints from the NAIS workers about the slippery conditions. (Compl. ¶ 14; Holmes Dep. 39-40.)

Immediately after arriving on the roof on the morning of January 31, King slipped and fell face-first into a pole. (King Dep. 17, 54-55.) King's supervisor, Mark Holmes, helped him walk back inside the building. (*Id.* at 55-58.) For the next six and a half hours King remained

2

inside with the New York crew, which was performing cleaning services on the factory's interior. The supervisor of the New York crew, an individual named "John," instructed King to sit on a bucket and operate a foot pedal that generates water pressure for the power-washers. (King Dep. 16-17, 23-24.) After finishing his work inside, King stated that John instructed him to return to the roof. (Def.'s Ex. 1, at 7.) Soon after emerging on the roof, King slipped and fell again, and was rendered unconscious. As a result of this incident, King sustained injuries to his back and head, and he lost two of his front teeth. (Compl. ¶ 11.)

On December 5, 2008, King filed this lawsuit asserting a cause of action for negligence against CertainTeed. (Paper No. 1.) CertainTeed subsequently filed a Third-Party Complaint against NAIS, claiming breach of contractual indemnification. (Paper No. 5.) On April 3, 2009, CertainTeed filed the instant Motion for Summary Judgment (Paper No. 10) in which it argues that King's negligence claim is barred, as a matter of law, by the doctrine of assumption of risk. In his briefs opposing summary judgment, King contends that under Pennsylvania law, his negligence claim should be determined by a jury applying comparative negligence principles.

## **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining

whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## **DISCUSSION**

Defendant CertainTeed moves this Court to enter summary judgment against King, contending that he cannot recover on his negligence claim because it is barred by the doctrine of assumption of risk. Specifically, Defendant notes that King was injured after he voluntarily returned to the roof with an awareness of the icy and dangerous conditions. On the other hand, King contends that under Pennsylvania law, the question of whether a plaintiff has assumed a risk is more appropriately preserved for a jury's determination based upon comparative negligence principles. This is especially the case, King posits, in suits arising from the employment context, since reasonable minds could differ on the issue of whether an employee voluntarily encountered a risk that was attendant to his job.

As a preliminary matter, this Court must decide whether Maryland law or Pennsylvania law governs the present action. A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Maryland adheres to the doctrine of *lex loci delicti* which applies the law of the state where the alleged injury occurred. *Laboratory Corp. of America v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (Md. 2006). Because King's accident occurred in Pennsylvania, this Court finds that Pennsylvania law governs the present case.[2]

### A. The Assumption of Risk Doctrine under Pennsylvania Law

---

[2] The parties agree that Pennsylvania law applies in this case. *See* Def.'s Mot. for Summ. J. 3; Pl.'s Mot. Opp. Summ. J. 4.

Under Pennsylvania law, a plaintiff asserting a negligence claim must establish "(1) the existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant." *Atcovitz v. Gulph Mills Tennis Club*, 812 A.2d 1218, 1222 (Pa. 2002).

The assumption of risk doctrine is normally viewed as an affirmative defense that—if established—will bar a plaintiff's recovery for negligence. When applying Pennsylvania law, courts are instructed to utilize a "modified" form of the assumption of risk doctrine, under which it is no longer viewed as an affirmative defense, but instead as a theory that is subsumed into an analysis of whether the defendant owed a duty to the plaintiff. *Hardy v. Southland Corp.*, 645 A.2d 839, 842 (Pa. Super. 1994).

The assumption of risk defense is secured upon a showing that the plaintiff, "with appreciation and knowledge of an obvious danger, purposely elects to abandon a position of relative safety and chooses to reposition himself in a place of obvious danger and by reason of that repositioning is injured." *McIntyre v. Cusick*, 372 A.2d 864, 866 (Pa. Super. 1977). The burden of showing voluntary assumption of risk is on the defendants. *See Whitley v. Philadelphia Transp. Co.*, 234 A.2d 922, 924 (Pa. Super. 1967). "Mere contributory negligence does not establish assumption of the risk." *Staub v. Toy Factory Inc.*, 749 A.2d 522, 529 (Pa. Super. 2000). "Rather, a plaintiff has assumed the risk where he has gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries." *Id*. (citing *Fish v. Gosnell*, 463 A.2d 1042, 1049 (Pa. Super. 1983)). "In order to prevail on assumption of risk, the defendant must establish both the 'awareness of the

5

risk' prong and the 'voluntariness' prong." *Staub*, 749 A.2d at 529 (citing *Jara v. Rexworks*, *Inc*. 718 A.2d 788, 795 (Pa. Super. 1998)).

Pennsylvania courts have determined that the assumption of risk doctrine should only be applied to bar a negligence claim at the summary judgment stage in rare instances where there is absolutely no doubt concerning its application. *See, e.g.*, *Barrett v. Fredavid Builders, Inc.*, 685 A.2d 129, 131 (Pa. Super. 1996) (stating that assumption of risk is established as a matter of law "*only where it is beyond question* that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition") (emphasis added); *Howell v. Clyde*, 620 A.2d 1107, 1113 (Pa. 1993) (plurality opinion) (noting that a court "may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury"). If a court does not find it to be one of the limited circumstances where it is "beyond question" that the plaintiff assumed the risk, then the case is properly preserved for a jury's determination applying the theory of comparative negligence.[3] *See Howell*, 620 A.2d at 1113.

The limited currency of the assumption of risk doctrine in negligence actions is reflective of its disfavored status under Pennsylvania law. *See Staub*, 749 A.2d at 528 (noting that the "doctrine has . . . fallen into disfavor, as evidenced by [the Pennsylvania] supreme court's . . . recent attempts to abolish or limit it") (citations omitted). Pennsylvania has, by statute, adopted a comparative negligence regime, under which a jury may appropriate loss between a negligent plaintiff and a negligent defendant. *See* Comparative Negligence Act, 42 Pa. C.S.A. § 7102. Courts have noted that the policy informing comparative negligence is at odds with the inflexible nature of assumption of risk, which acts as a complete bar to recovery. *See Howell*, 620 A.2d at

---

[3] Normally when a negligence case is submitted to a jury on a comparative negligence theory, the jury is not instructed on the doctrine of assumption of risk. *Howell v. Clyde*, 620 A.2d 1107, 1113 (Pa. 1993) (plurality opinion).

1112 (plurality); *Rutter v. Northeastern Beaver County School District*, 437 A.2d 1198, 1210 n.6 (Pa. 1981) (plurality).  In addition, assumption of risk has been criticized for being difficult to apply and confusing for juries since it overlaps with ordinary negligence law.  *See Howell*, 620 A.2d at 1108 (citing *Rutter*, 437 A.2d at 1198).

In *Staub v. Toy Factory, Inc.*, the Superior Court of Pennsylvania resolved that the assumption of risk doctrine is especially unwarranted in cases arising from the employment context.  749 A.2d at 529-33.  In *Staub*, the plaintiff was a roofer who was hired to install insulation sheets on the roof of a building being constructed for the defendant, Toy Factory, Inc.  Staub was injured after he fell through a pre-made hole on the roof that was not safeguarded.  *Id.* at 525.  The trial court granted summary judgment in favor of the defendants upon its finding that plaintiff had voluntarily and knowingly assumed the risk presented.  *Id.*  The Superior Court reversed the trial court's ruling on assumption of risk, and concluded that the issue was more appropriately reserved for a jury's determination.  *Id.* at 532-33.

In reaching its holding, the court thoroughly examined the assumption of risk doctrine under Pennsylvania law.  The court noted that the theory was largely incongruous in the employment context, because an employee's freedom of choice is circumscribed when he or she is assigned to perform certain work-related tasks.  *Id.* at 530-32.  For support, the court cited a products liability case in which the court found the assumption of risk defense to be unavailing because "the employee cannot voluntarily assume the risk where in doing his job he is required to use equipment furnished by his employer."  *Id.* at 530 (citing *Jara v. Rexworks, Inc.*, 718 A.2d 788, 795 (Pa. Super. 1998)); s*ee also*, *Long v. Norriton Hydraulics, Inc.*, 662 A.2d 1089, 1091 (Pa. Super. 1995) (questioning whether "voluntariness" could be established in a products liability case where an employee's job requires him to operate dangerous machinery).  The *Staub*

court therefore concluded that:

> [I]n a negligence context, where an employee is required to encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced the injury. Thus the employee's conduct is better judged by its reasonableness, that is, by negligence principles. A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence.

*Staub*, 749 A.2d at 529-30 (citations and quotations omitted).

### B.  Whether the Assumption of Risk Doctrine Applies in this Case

To decide whether the assumption of risk doctrine applies, the first question presented is whether King was aware of the risk he encountered.  *See Barrett*, 685 A.2d at 131 ("the evidence must establish conclusively that the plaintiff was subjectively aware of the risk").

The record reflects that King was clearly aware of the dangerous conditions on the factory roof on January 30 and 31 of 2007.  He stated that he fell on the icy roof five times on the first day of the cleaning job, and he noted that on the morning of the second day he fell face first into a pole.  (Def.'s Ex. 1, at 4-5.)  King stated that because of the inclement weather and the hazardous conditions "[w]e should not have been on that roof."  (Def.'s Ex. 1 at 4.)  At his deposition, he testified that on the first day he "just kept falling all day until they took us off the roof," and that "the job was too dangerous to be on."  (King Dep. 41, 50.)

However, a more difficult question is presented by the second prong of the assumption of risk inquiry that relates to a plaintiff's "voluntariness"—a requisite showing that "is established only when the circumstances manifest a willingness to accept the risk."  *Staub*, 749 A.2d at 529. *See Fish*, 463 A.2d at 1048 (observing that "a particularly difficult element of the defense is in defining 'circumstances that manifest a willingness to accept' the risk.") (quoting Restatement (Second) of Torts § 496C).

CertainTeed argues that on January 31, 2007, after remaining inside the factory to recover from an earlier fall, King voluntarily returned to the roof to continue working in the icy conditions. They add that while a New York supervisor had instructed him to return to the roof, there "is no indication that Plaintiff's supervisor, Mark Holmes, required him to return to the roof." Def.'s Mot. for Summ. J. at 9. Finally, CertainTeed claims that King had the option of performing work inside the factory and they contend that *Staub*'s holding restricting the use of assumption of risk in the employment context "is only applicable in the situation where the employee's choice is do the job or quit, and is not applicable in the situation here . . . ." Def.'s Reply at 3.

This Court finds that the *Staub* decision cautions against the application of the assumption of risk doctrine in precisely the sort of circumstances that exist in the present case. King was working as a laborer who was assigned to perform power-washing services at the factory, a job that has inherent risks even under normal conditions. (Holmes Dep. 12.) The record suggests that all of the parties involved, including the laborers, the NAIS supervisors, and representatives of CertainTeed, were aware of the dangerous conditions on the roof. Nevertheless, none of the parties took any steps to end the project prior to King's accident. In addition, some of King's testimony indicates that he did not believe that he could abstain from following orders under the circumstances. When describing his reaction after he fell on the morning on January 31, he stated:

> I went down. I laid there. Pardon my French. I bitched and I cussed. I moaned and I groaned. Mark tried to give me a hand up. I slapped his hand away because I was really mad was because we shouldn't have been on the roof. And I was hurt. I told him, get the hell away from me because he put me back on the same situation I was the day before, and he shouldn't have done that.

(King Dep. 55.) King also noted that he returned to the roof on January 31 after a NAIS

supervisor from the New York crew had instructed him to do so.  (Def.'s Ex. 1 at 7.)

The facts in this case exhibit the sort of complexities that so often beset the "voluntariness" inquiry in a negligence action arising from an employment-related context.  CertainTeed's contention that *Staub*'s holding "is only applicable in the situation where the employee's choice is do the job or quit" is baseless, as the court in *Staub* expressly stated "[w]e do not agree . . . that a plaintiff/employee is required to introduce evidence of coercion to establish the involuntariness of his behavior."  749 A.2d at 531.  Moreover, the record reveals that fault cannot be clearly ascribed to any one of the participating parties; therefore this case would be more appropriately resolved under comparative negligence principles, whereby fault may be apportioned among the responsible parties.  In sum, this case presents a textbook example supporting the observation that "in the employment context, reasonable minds could differ as to whether a plaintiff/employee 'deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury.'"  *Staub*, 749 A.2d at 532 (quoting *Howell*, 620 A.2d at 1113).  As a result, this Court concludes that King's negligence action survives CertainTeed's motion for summary judgment; this case may proceed to trial and ultimately to a jury that is instructed on the principles of comparative negligence.

## CONCLUSION

For the foregoing reasons, Defendant CertainTeed's Motion for Summary Judgment (Paper No. 10) is DENIED.  A separate Order follows.

Date : August 4, 2009                                        /s/_____
                                                             Richard D. Bennett
                                                             United States District Judge